UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PABLO RODRIGUEZ-PINEDA,

                Petitioner,

    v.

JULIO HERNANDEZ, *et al.*,

                Respondents.

Case No. C26-2367-MLP

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Pablo Rodriguez-Pineda is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington ("NWIPC"). Petitioner, through counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging an immigration judge's ("IJ") denial of bond. (*See* dkt. # 1.) He argues that the IJ abused his discretion in finding Petitioner to be a flight risk and that his continued detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (*See id.*, ¶¶ 65-75.) Respondents filed a return memorandum (dkt. # 6), along with an unsworn declaration from their counsel, Barbara Andrade (dkt. # 7) ("Andrade Decl."), and a sworn declaration from U.S. Department of Homeland Security

("DHS") Deportation Officer Andre Ouk (dkt. # 8) ("Ouk Decl."). Petitioner filed a traverse in reply. (Dkt. # 9.)

The Court, having reviewed the parties' submissions and the governing law, GRANTS the petition (dkt. # 1) in part and ORDERS Petitioner's release from immigration custody for the reasons set forth below.[1]

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico. (Ouk Decl., ¶ 3.) He first entered the United States on or around March 20, 1997, was encountered by U.S. Border Patrol ("USBP") near Chula Vista, California, and was granted "voluntary return" to Mexico the same day. (*Id.*, ¶ 4.) On April 4, 1997, Petitioner re-entered the United States, was encountered by USBP near San Diego, California, and was again granted "voluntary return." (*Id.*, ¶ 5.) On that occasion, Petitioner presented himself under the alias "Alberto Gozalez-Acosta." (*Id.*) Petitioner re-entered the United States for a third time on an unspecified date, but apparently sometime in 1997. (*See* Andrade Decl., Ex. D at 4.)

Petitioner is married and has two U.S. citizen children, ages 13 and 19. (Dkt. # 1, ¶ 22.) He also has a 26-year-old daughter who has Deferred Action for Childhood Arrivals ("DACA") status and lives in Tacoma, Washington, with her U.S. citizen husband and 5-year-old U.S. citizen child. (*Id.*) Petitioner's father, who is now deceased, was a lawful permanent resident. (*Id.*, ¶ 22, Ex. A at 52, Ex. C at 4.) Prior to his detention, Petitioner lived in Tacoma with his wife and U.S. Citizen children and provided support for his family by working in the construction industry. (*Id.*, ¶ 23, Ex. A at 23-24.) Petitioner has consistently filed income taxes

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

(*see id.*, ¶ 23, Ex. A at 112-160) and has no criminal history (*id.*, ¶ 23, Ex. A at 19-22, Ex. B at 5).

On April 14, 2026, ICE officers encountered and arrested Petitioner following a traffic stop conducted during a targeted enforcement action in Tacoma, Washington. (*See* dkt. # 1, ¶ 24, Ex. B at 4; Ouk Decl., ¶ 7.) Petitioner was served with a Notice to Appear charging him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner was thereafter transferred to NWIPC where he remains. (Ouk Decl., ¶ 8.)

On April 24, 2026, Petitioner and four other noncitizens filed a petition for writ of habeas corpus in this District, alleging that they were members of the Bond Denial Class certified in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), and thus were entitled to a bond hearing under 8 U.S.C. § 1226(a). *See Errodas-Herrera v. Hernandez*, No. C26-1398-TMC, dkt. # 1. On May 4, 2026, the Honorable Tiffany M. Cartwright granted the petition and ordered that Respondents provide Petitioner a bond hearing under § 1226(a) within 14 days of receiving Petitioner's request for one. *Id.*, dkt. # 12.

On May 13, 2026, Petitioner appeared before an IJ at the Tacoma immigration court for his court-ordered bond hearing. (Dkt. # 1, ¶ 26; Ouk Decl., ¶ 11.) In advance of the hearing, Petitioner submitted evidence of his ties to the United States, including the birth certificates of his U.S. citizen children and grandchild, a letter from his U.S. citizen son-in law and sponsor, proof of his fixed address, identification documents issued by the State of Washington dating back to 2004, vehicle purchase/ownership records, and five years of tax returns. (*See* dkt. #1, ¶ 27, Ex. A.) Respondents, in turn, submitted a copy of DHS's Form I-213 (Record of Deportable/Inadmissible Alien). (*Id.*, Ex. B.)

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

At the conclusion of the hearing, the IJ denied Petitioner's request for bond. (*See* Andrade Decl., Exs. C-D.) The initial order was issued on a checkbox form and the box indicating "Flight Risk" was checked. (*Id.*, Ex. C) There were additional boxes checked indicating that "Conditional release" was denied and that "Ability to pay" had been considered. (*Id.*) The order contains no written findings or analysis. (*Id.*) On May 18, 2026, Petitioner appealed the IJ's bond denial to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. (Ouk Decl., ¶ 12.) On May 21, 2026, the IJ issued a written memorandum outlining the bond determination and his reasoning. (Andrade Decl., Ex. D.)

On May 22, 2026, Petitioner appeared with counsel at an individual hearing on the merits of his application for relief from removal. (Ouk Decl., ¶ 14.) An IJ issued a written order on June 11, 2026, denying Petitioner relief but granting his request for post-conclusion voluntary departure. (*Id.*, ¶ 15.) Petitioner appealed the IJ's decision to the BIA on June 29, 2026, and that appeal also remains pending. (*Id.*, ¶ 16.)

Petitioner filed the instant petition on July 7, 2026, challenging the adequacy of the bond hearing afforded him by the IJ in May 2026. (Dkt. # 1, ¶¶ 3, 65-75.)

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c).

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

### III.     DISCUSSION

Petitioner raises two claims in his petition. First, he alleges the IJ abused his discretion in assessing the required factors for determining whether Petitioner constituted a flight risk, in violation of 8 U.S.C. § 1226. (Dkt. # 1, ¶¶ 65-69.) Second, he alleges that because his detention does not "bear a reasonable relation" to either preventing flight or preventing danger to the community, it violates the Due Process Clause of the Fifth Amendment. (*Id.*, ¶¶ 70-75.) Petitioner also contends that he should not be required to exhaust his administrative remedies before seeking federal habeas relief here or, alternatively, that the requirement should be waived. (*Id.*, ¶¶ 49-64.)

Respondents argue that Petitioner should be required to exhaust his administrative remedies and that, even if the Court reaches the merits, it should deny the petition because Petitioner has failed to demonstrate any valid constitutional or legal errors resulting from his bond hearing. (Dkt. # 6 at 4-8.)

### A.     Exhaustion of Administrative Remedies

There is no dispute that Petitioner has yet to exhaust his administrative remedies as to the IJ's bond decision given that his appeal of that decision remains pending before the BIA. The Court thus considers whether exhaustion should be required here.

In cases brought under § 2241, exhaustion is a prudential, rather than jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record and reach a proper decision; (2) waiving the requirement would encourage bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

Even where these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Assuming without deciding that the *Puga* factors weigh in favor of exhaustion, this Court finds that waiver of the exhaustion requirement is appropriate here as administrative remedies are "inadequate or not efficacious" and "irreparable injury would result." *Laing*, 370 F.3d at 1000. Government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez*, 802 F. Supp. 3d at 1307. Petitioner has been detained since April 2026 and requiring him to wait another six months, conceivably more, for BIA review "would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." *Zavala Sandoval v. Hernandez*, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (citations omitted); *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).

Petitioner is the primary financial provider for his wife and two U.S. citizen children, whom he supports through his work in the construction industry. (Dkt. # 1, ¶ 23, Ex. A at 23-24.) Petitioner represents to the Court that his wife has been struggling to support the household and

care for the children in his absence, and that his 13-year-old daughter "has experienced depression, difficulty sleeping, and a loss of motivation," since his detention, and that "[h]er school performance has declined." (*See* dkt. # 1, ¶¶ 30, 64, Ex. A at 24.) The Ninth Circuit has acknowledged that "economic burdens imposed on detainees and their families as a result of detention" as well as "the collateral harms to children of detainees whose parents are detained" are relevant considerations in the irreparable harm analysis. *Hernandez*, 872 F.3d at 995. The Court therefore waives any exhaustion requirement.

### B.    Bond Denial – Abuse of Discretion

Habeas courts review an IJ's bond determinations for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779-80 (9th Cir. 2024). Under an abuse of discretion standard, the court is not permitted to reweigh evidence; it can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under *Guerra*: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

The IJ has "broad discretion in deciding the factors that he or she may consider" and "may choose to give greater weight to one factor over others, as long as the decision is reasonable." *Guerra*, 24 I. & N. Dec. at 40. In order to sustain a permissible flight risk finding, any factor considered by an IJ must rationally bear on a noncitizen's likelihood to appear for immigration proceedings. *Matter of Patel*, 15 I. & N. Dec. 666, 667 (BIA 1976) (reversing flight risk finding where IJ relied on factors bearing "little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding").

Here, the IJ relied on Petitioner's immigration history, his past use of an alias, his use of a false social security number to work, and his limited opportunities for relief from removal in finding that Petitioner was "a very poor bail risk." (Andrade Decl., Ex. D.)

In particular, the IJ cited Petitioner's three unlawful entries into the United States and two voluntary removals in 1997. (*See* Andrade Decl., Ex. D.) However, the IJ failed to explain why this conduct, which occurred almost thirty years ago, would suggest that Petitioner would be motivated to flee or otherwise not appear for future immigration proceedings today. *See Garcia Miranda*, 2026 WL 1328227, at *4 ("The IJ does not explain how [petitioner's] prior unlawful entry, an event that occurred almost three decades ago, . . . informs his flight risk *today*, . . . in the face of overwhelming evidence of his deep ties to his community and family.") (emphasis in original); *Montiel Moreno v. Hernandez*, 2026 WL 1906522 (W.D. Wash. June 18, 2026) (similar).

The record demonstrates that Petitioner has lived in the United States since his last entry in 1997 and has an established residence (dkt. # 1, Ex. A at 46), consistent employment (*id.* at 23), a wife and two U.S. citizen children who rely upon him for emotional and financial support (*id.* at 23-24), additional family including a daughter who has a U.S. citizen spouse and U.S.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

citizen child (*see id.* at 29-41), and no criminal history whatsoever (*see id.* at 19-22). The IJ characterized Petitioner's family and employment history as "limited equities" but otherwise did not meaningfully engage with Petitioner's proffered evidence or explain why it was outweighed by entries into the United States and voluntary returns that occurred almost thirty years ago. (*See* Andrade Decl., Ex. D at 4-5.) Absent any apparent connection between Petitioner's unlawful entries decades ago and his risk of absconding *today*, these events cannot rationally serve as a basis to deny bond. *See Soriano v. Hernandez*, 2026 WL 969764, *5 (W.D. Wash. April 10, 2026) ("Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale.").

The IJ also cited Petitioner's use of an alias during his unsuccessful second attempt to enter the country in April 1997 as a factor supporting a finding of flight risk. (*See* Andrade Decl., Ex. D at 3-5.) Petitioner was at that time 17 years old. (Dkt. # 1, ¶ 44.) Once again, the IJ failed to explain how the use of an alias almost thirty years ago, when Petitioner was a minor, is connected to his risk of flight today, and the Court can discern no such connection from the record before it. Notably, Petitioner was forthcoming with identification bearing his correct name at the time of his arrest by ICE agents in April 2026 (*see* Andrade Decl., Ex. B at 2), which is arguably more relevant to considerations of Petitioner's risk of flight today. *See Garcia Miranda*, 2026 WL 1328227, at *4 (concluding IJ's finding of flight risk based in part on an "inconsistent name and birthdate" appearing in the petitioner's immigration records could not be sustained because the petitioner was a minor without identification at the time the incorrect information was provided and he "was forthcoming with his correct name and birthdate at the time of his 2025 arrest.")

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

The IJ next cited Petitioner's lack of work authorization and use of a false Social Security number to work as factors informing his conclusion that Petitioner was a flight risk. (Andrade Decl., Ex. D at 4-5.) Once again, however, the IJ's written memorandum fails to explain how Petitioner's use of a false Social Security number to maintain employment weighs in favor of finding him a flight risk, and other courts in this District have expressly rejected reliance on a noncitizen's use of a false Social Security number for work to support such a finding. *See, e.g., Soriano*, 2026 WL 969764, at *5; *Flores Velazquez v. Hernandez*, 2026 WL 1815731, at *8 (W.D. Wash. June 24, 2026).

As the court recognized in *Flores Velazquez*, the reliance of an IJ on use of a false Social Security number to support a flight risk finding is "in tension with BIA caselaw, because 'a noncitizen without any employment history is a factor that militates against release on bond because it would indicate the noncitizen is less likely to appear for removal proceedings.'" 2026 WL 1815731, at *8 (citing *Soriano*, 2026 WL 969764, at *5 (citing *R-A-V-P-*, 27 I. & N. Dec. Dec. 803, 805 (BIA 2020))). Here, as in *Flores Velazquez*, "[t]he IJ's memorandum does not acknowledge this tension or explain why Petitioner's use of a false Social Security number outweighs the employment . . . facilitated by it." *Id.*

There is no evidence in the record that Petitioner used his false Social Security number for any reason other than to maintain employment and the IJ's memorandum decision does not suggest otherwise. (*See* Andrade Decl., Ex. D at 5.) Consistent with the courts' decisions in *Soriano* and *Flores Velazquez*, this Court finds that it was not logical for the IJ to conclude that Petitioner's use of a false Social Security number for purposes of maintaining employment weighed in favor of finding him to be a flight risk, and the IJ abused his discretion in doing so.

Finally, the IJ cited to Petitioner's limited opportunities for relief from removal as a factor supporting a finding of flight risk. (Andrade Decl., Ex. D at 4-5.) The BIA has identified that an IJ may consider the likelihood that relief from removal will be granted in determining whether a noncitizen is a flight risk because "[a] [noncitizen] with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *see also Matter of R-A-V-P-*, 27 I. & N. Dec. at 805 (BIA 2020). However, the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, 2026 WL 1674357, at *7 (W.D. Wash. May 26, 2026); *Tavurov v. Noem*, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh*, 638 F.3d at 1205).

Here, the IJ noted in his memorandum decision that Petitioner "intends to seek cancellation of removal," but that "his only qualifying relatives (his two youngest children) are generally in good health." (Andrade Decl., Ex. D at 4-5.) And, in fact, the immigration court has since denied Petitioner's application for relief from removal though that decision is not yet final as it is currently on appeal to the BIA. (*See* Ouk Decl., ¶¶ 14, 16.) While it might be rational to draw the conclusion that a noncitizen who faces inevitable removal may be less likely to appear at future removal hearings, the IJ failed to make that connection to Petitioner's individual circumstances or otherwise discuss whether the "relative strengths or weaknesses of Petitioner's claims for relief outweighed" the significant evidence that weighed against finding him to be a flight risk. *Soriano*, 2026 WL 969764, at *5. Again, Petitioner has been living in the United States for almost three decades, he is in a stable relationship with his wife, has dependent U.S. citizen children, and has no criminal history. (*See* dkt. # 1.) To the extent the IJ considered any of

this information or factored it into his decision-making, that is not reflected in his memorandum decision.

In sum, the cited reasons for denying bond do not stand on their own (or in the aggregate) and it does not appear the IJ considered, or engaged with, the significant amount of evidence in Petitioner's favor. While the IJ acknowledged the contrary evidence presented by Petitioner, that is not enough; an IJ must meaningfully engage with such evidence. *See, e.g., Miri v. Bondi*, 2026 WL 622302, at *8-9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at * 8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion). No reasonable adjudicator could conclude on this record that Petitioner poses a flight risk. The IJ's decision was an abuse of discretion and Petitioner's continued detention violates due process.

**C.     Remedy**

Petitioner asserts that release is appropriate because he is not a flight risk. (Dkt. # 1 at 24-26.) Respondents do not address the appropriate remedy beyond their general request that the petition be denied. (*See* dkt. # 6.) Federal courts have a "fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). This jurisdiction has found no basis for similarly situated petitioners to continue to be detained. *See Valdez-Reyes v. Scott*, 2026 WL 1361635, at *4 (W.D. Wash. May 15, 2026) (ordering immediate release); *Garcia Miranda*, 2026 WL 1328227, at *5 (same); *Soriano*, 2026 WL 969764, at *6 (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same); *W.T.M.*, 2026 WL 262583, at *5 (same). The Court finds the same here and thus the appropriate remedy is for Petitioner's immediate release with reasonable conditions of supervision.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

**D.    Request for Ancillary Relief**

In addition to his request for immediate release from custody, Petitioner also requests that, upon his release, Respondents be prohibited from requiring him to wear "an ankle monitor or wrist monitor" and be required to return his personal property. (Dkt. # 1 at 26.) Petitioner does not provide relevant factual development or engage in any legal analysis related to those requests, and the requests are therefore denied.

**IV.    CONCLUSION**

Based on the foregoing, the Court hereby ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2)    Respondents shall RELEASE Petitioner from custody within **twenty-four (24) hours** of the issuance of this Order with reasonable conditions of supervision.

(3)    Respondents shall file a notice with the Court confirming Petitioner's release within **forty-eight (48) hours**.

(4)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

DATED this 11th day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13